UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                Case No. 12-20683

DAVID CROSSMAN,

    Defendant.
                                                               /

**OPINION AND ORDER DENYING IN PART MOTION TO VACATE SENTENCE AND SCHEDULING EVIDENTIARY HEARING**

Defendant David Crossman was convicted by plea of traveling in interstate commerce for the purpose of engaging in illicit sexual conduct under 18 U.S.C. § 2423(b). This court sentenced Defendant to 56 months incarceration. (*See* Dkt. # 31.) Defendant is currently serving five years of supervised release. (*See* Dkt. # 47.) Before the court is Defendant's motion to vacate his sentence under 28 U.S.C. § 2255, filed October 24, 2014. (Dkt. # 32.) The government filed a response to the motion (Dkt. # 43), to which Defendant replied (Dkt. # 45). The court found oral argument unnecessary. (Dkt. # 35.) For the reasons that follow, the court will deny the bulk of Defendant's motion and schedule an evidentiary hearing regarding trial counsel's alleged failure to file a notice of appeal.

**I. STANDARD**

Under § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the ground "that the sentence was imposed in violation of the Constitution or laws of the United

States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). As "[§] 2255 is not a substitute for a direct appeal," *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal" to merit collateral relief, *Frady*, 456 U.S. at 166. Consequently, "[t]o prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993)). Though non-constitutional errors are generally outside the scope of § 2255 relief, *see United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000), a petitioner can prevail on a § 2255 motion alleging non-constitutional error "by establish[ing] a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process,'" *Watson*, 165 F.3d at 488 (internal quotation marks omitted) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

Defendant grounds his motion mainly upon the alleged inadequacy of his legal representation. To establish ineffective assistance of counsel under the Sixth Amendment, Defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Defendant must first show that his counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth

Amendment." *Id.* at 687. Courts must afford defense attorneys "wide latitude" and, in analyzing their conduct under the Sixth Amendment, must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Defense counsel are entitled to a "strong presumption" that they made "all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011).

If Defendant succeeds in proving deficient performance, he must next show that the deficient performance was prejudicial. Prejudice requires more than "some conceivable effect on the outcome of the proceeding"; Defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94.

## II. DISCUSSION

In his motion, Defendant argues that his guilty plea was not made knowingly, intelligently or voluntarily; that he received ineffective assistance from his trial counsel during the "plea-bargain stage;" that he received ineffective assistance of counsel during sentencing; and that his attorney "promised to, but did not, file [a] notice of appeal." (*See* Dkt. # 32.) The court will address each point in turn.

### A. Guilty Plea

At the plea hearing, Defendant testified under oath that he had "ample time to think about this most important decision," that he had listened to and understood the advice of his attorneys, that the decision to plead guilty was his own, and that he understood himself to actually be guilty of the crime in question. (Dkt. # 40, Pg. ID 235-

37, 246.) Defendant now claims that his guilty plea was not made knowingly, intelligently, or voluntarily. In support, Defendant advances four arguments.

First, Defendant contends that trial counsel and the court "failed to explain the true nature of the charges." (Dkt. # 32, Pg. ID 128.) In particular, Defendant mistakenly argues that to violate § 2423(b) he must have "use[d] an interstate instrument to convince a minor to engage in illegal or illicit sexual activity" and have "spoke[n]" to a minor using such an instrument. (Dkt. # 32, Pg. ID 128.) But as the court explained at the plea hearing, Defendant's crime requires only that he have (1) knowingly traveled "across state lines" (2) "at least in part for the purpose of engaging or expecting to engage in sexual conduct . . . with someone who had not attained the age of majority." (Dkt. # 40, Pg. ID 239-40); *see also United States v. Wise*, 278 Fed. Appx. 552, 558 (6th Cir. 2008) ("For Wise to have been found guilty under 18 U.S.C. § 2423(b), the Government was required to prove that: (1) Wise traveled in interstate commerce; (2) his purpose was to engage in illicit sexual activity with a minor (person less than 18 years of age); and (3) the intended sexual act would have been in violation of federal law had it been committed."). Defendant points to no authority to support his contention that § 2423(b) has any additional elements. Neither the court nor trial counsel erred in this respect.

Second, Defendant argues that his guilty plea was not made knowingly because trial counsel did not inform him of the strength of the government's case and a possibility that he could defend himself based on "character" evidence. (Dkt. # 32, Pg. ID 128.) In the Sixth Circuit, "challenges to the weight or credibility of the evidence do not establish innocence, and claims of insufficient evidence short of establishing actual

4

innocence will not be reviewed in a § 2255 proceeding. *Goward v. United States*, 569 Fed. Appx. 408, 411-12 (6th Cir. 2014) (citing *Zack v. United States*, 28 F.3d 1215 (6th Cir. 1994)). Defendant points to nothing to establish his actual innocence.

Relatedly, Defendant argues that he was unaware of a possible entrapment defense. (Dkt. # 32, Pg. ID 129.) Entrapment requires "proof of two elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal activity." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002) (citing *United States v. Nelson*, 922 F.2d 311, 317 (6th Cir. 1990)). Defendant never addresses the first element. With respect to the second element, Defendant argues simply that "it is undisputed that [Defendant] did not seek out an underage male partner, but rather sought out a young adult[.]" (Dkt. # 32, Pg. ID 129.) The court disagrees.

As stated both in the plea agreement and under oath during the plea hearing, Defendant traveled from Atlanta to Detroit intending to meet with a person he believed to be a fourteen-year-old boy and his stepfather in order to engage in sexual activity with the boy. (Dkt. # 27, Pg. ID 65-66; Dkt. # 40, Pg. ID 247-48.) And as the government points out, Defendant's communications to the undercover agent, who Defendant believed was a stepfather offering his minor stepson for sex with Defendant, indicated his specific attraction to the minor. (Dkt. # 41, Pg. ID 267-68, 273.) In particular, Defendant's comments that he was "drooling" thinking about the fourteen-year-old, describing the sex acts Defendant intended to perform on the boy, and asserting that he had previously had sexual encounters with a father and son, all make clear beyond

5

rational dispute the existence of Defendant's predisposition. (*See id.* at Pg. ID 269; Dkt. # 43, Pg. ID 299.)

Finally, Defendant avers that his guilty plea is defective because he was never informed about "the extensive supervised release period or the lifetime registration requirement." (Dkt. # 32, Pg. ID 129.) Contrary to Defendant's assertion, however, both the supervised release period and the registration requirement were discussed in the plea agreement Defendant signed. (Dkt. # 27, Pg. ID 68-69.) Moreover, the court explained the stringent requirements of both supervised release and the Sex Offender Registration Act during the plea hearing, which Defendant stated, under oath, that he understood. (Dkt. # 40, Pg. ID 140-41.) The court concludes that Defendant's guilty plea was not defective for any of these reasons.

### B.  Pretrial Assistance of Counsel

Defendant next states that his attorney did not discuss the case with him until the day of his plea hearing and did not understand the "true elements of the crime." (Dkt. # 32, Pg. ID 130.) Based on these allegations, Defendant argues that he received ineffective assistance of counsel during the "pre-trial" and "plea-bargaining" stages of his prosecution. (*Id.*) Further, Defendant avers that his attorney "mislead and bribed [sic]" him into pleading guilty. (*Id.*)

Defendant's statements in his motion are inconsistent with his sworn testimony during the plea hearing. In the hearing, Defendant stated that he had discussed the case completely with his attorneys, that he was confident that he understood their advice, that he understood the decision on whether to plead guilty was his alone to make, that he had thought carefully about their advice in making his decision to plead

6

guilty, that nobody had done anything he thought was inappropriate to get him to plead guilty, that there were no "secret promises" persuading him, and that he was satisfied with both of his attorneys. (Dkt. # 40, Pg. ID 245-47.) The court cannot imagine a more thorough series of assurances from a criminal defendant given during a plea hearing. The court credits this sworn testimony over the vague, contradictory, unsupported, and self-serving allegations in Defendant's motion.

As to Defendant's assertion that counsel misunderstood the elements of his offense, Defendant's understanding of the crime is mistaken for the same reasons discussed above. Mindful of the strong presumption of competence afforded to defense counsel, the court finds no error on the part of trial counsel meeting the standard set out in *Strickland*. *See Cullen*, 131 S. Ct. at 1407.

### C. Sentencing Assistance of Counsel

Defendant next argues that counsel erred by not doing more to produce favorable testimony, failing to play a tape recorded by the FBI, and that one of his attorneys was too sick and the other too ill-prepared to constitute adequate counsel during sentencing. (Dkt. # 32, Pg. ID 132.) The court disagrees.

Defendant's characterization of the sentencing hearing is inconsistent with the record. The transcript from the sentencing hearing does not show Ms. Jefferson to be unprepared, or to have been unable to "finish her presentation" or to have "turn[ed] the proceeding over to Mr. Burkett" as Defendant asserts. (*Id.*) Rather, the court asked Ms. Jefferson to speak to Defendant's understanding of the presentence report because Mr. Burkett indicated that she had been the attorney to go over the report with Defendant. (Dkt. # 41, Pg. ID 256-57.) Ms. Jefferson then argued forcefully, albeit unsuccessfully,

7

for a downward departure. (*Id.* at Pg. ID 259-60.) Defendant then spoke on his own behalf. (*Id.*) At no point did Ms. Jefferson fail to answer a question directed to her, recall significant facts as necessary, or finish an argument. Beyond his (false) assertion that Ms. Jefferson was unable to finish her presentation, Defendant points to no specific decision or statement suggesting that Ms. Jefferson was unprepared.

With respect to Mr. Burkett's health, Defendant's assertion is similarly conclusory. Defendant claims only that "Mr. Burkett's illness kept him from preparing for sentencing; notably, this court permitted Mr. Burkett to sit throughout the sentencing because of the illness's debilitating effects." (Dkt. # 32, Pg. ID 132.) Defendant does not indicate what "illness" Mr. Burkett was suffering, but during an April 4, 2013 status conference, Mr. Burkett represented to the court that he required a hip replacement. (*See* Dkt. # 38, Pg. ID 198.) It is of no significance that Mr. Burkett asked, in order to alleviate his difficulty standing, that the court permit him to sit during some hearings. Defendant points to no relevant impact Mr. Burkett's joint pain had on the decisions made by counsel or the sentence this court imposed.

Defendant also fails to connect the alleged failure to produce favorable testimony from neighbors and friends at sentencing to the sentence he received. Similarly, he does not describe the contents of the tape recordings that he contends counsel should have played at sentencing, asserting only that "the FBI tape . . . would have revealed [Defendant's] travel to Detroit did not involve a plan to engage in the illicit three-way tryst with the government officer and the officer's make-believe paramour . . . . such that the court may have rejected the plea agreement[.]" (Dkt. # 32, Pg. ID 132.) But Defendant admitted under oath at the plea hearing that his "intent and design . . .

8

confirmed in various e-mail and online communications" was to "meet a 14-year-old boy and the boy's stepfather in order to engage in sexual activity with the boy." (Dkt. # 40, Pg. ID 248-49.)

The court concludes that Defendant's conclusory allegations do not demonstrate a deficiency in his retained legal representation within the meaning of *Strickland*, 466 U.S. at 687. In any event, Defendant also fails to show he suffered prejudice. *Strickland* requires more than "some conceivable effect on the outcome" of his sentencing hearing, he must show a "reasonable probability" that the outcome would have been different. *Id.* at 693-94. Defendant's bald assertion that the court might have rejected the plea agreement and imposed an even lighter sentence does not meet this standard. Defendant's counsel managed to secure a sentence that was less than half of the mandatory minimum that would have been required on the other count that was to be dismissed as a result of the plea agreement.

Successfully bargaining for a fifty percent sentence reduction does not in any way reflect deficient representation or prejudice.

## D. Appeal

The court necessarily reaches a different conclusion with respect to Defendant's assertion that he directed attorneys to file an appeal and they failed to do so. By rule, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). This remains true even when the defendant has waived his right to appeal. *Campbell v. United States*, 686 F.3d 353, 359-60 (6th Cir. 2013).

Accordingly, the court will hold an evidentiary hearing to determine whether, how, and when, if at all, Defendant directed his counsel to file a notice of appeal.

### III. CONCLUSION

IT IS ORDERED that Defendant's motion to vacate under § 2255 (Dkt. # 32) is DENIED IN PART. The motion is DENIED with respect to claims 1-3. A separate notice of hearing on claim 4 shall issue.

                                                                                          s/Robert H. Cleland              /
                                                                                          ROBERT H. CLELAND
                                                                                          UNITED STATES DISTRICT JUDGE

Dated: March 30, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 30, 2017, by electronic and/or ordinary mail.

                                                                                          s/Lisa Wagner                   /
                                                                                          Case Manager and Deputy Clerk
                                                                                          (810) 292-6522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\12-20683.CROSSMAN.2255.deny.in.part.schedule.hearing.TLH.RHC.docx